2023 NOV 14 PM 3:47
CLERK
BY [signature]

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:23-cr-00023
)
MARIA CONSTANTE-ZAMORA, )
)
Defendant. )

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**
(Doc. 30)

Pending before the court is Defendant Maria Constante-Zamora's motion to suppress statements made and evidence seized pursuant to a warrantless stop of a vehicle in which she was a passenger on February 19, 2023. Ms. Constante-Zamora contends that law enforcement lacked a reasonable suspicion of criminal activity in violation of the Fourth Amendment. She filed the pending motion on July 25, 2023, (Doc. 30) and the government opposed Ms. Constante-Zamora's motion on August 7, 2023 (Doc. 32). Following a hearing on October 19, 2023, the court took the pending motion under advisement.

Ms. Constante-Zamora is charged in a one-count indictment with knowingly attempting to transport and move illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. *See* Doc. 19.

The government is represented by Assistant United States Attorney Gregory L. Waples. Ms. Constante-Zamora is represented by Mark A. Kaplan, Esq.

## I. Findings of Fact.

The court makes the following findings of fact by a preponderance of the evidence.

United States Border Patrol ("BP") Agent John Mayfield has been a BP Agent for approximately twelve years and has worked out of the Newport, Vermont, station for

approximately nine years. His duties include patrolling the United States-Canada border and intercepting individuals who cross the border illegally or bring contraband across it. On February 19, 2023, he was patrolling in his marked BP vehicle in Derby Line, Vermont, when, at approximately 10:53 p.m., BP agents were alerted to possible illicit border crossing activity detected by remote surveillance cameras near Goodall Road in Derby, Vermont. The cameras showed three individuals walking south from the border in an area east of the Interstate 91 Port of Entry at Derby Line. The alert provided real-time information regarding where the individuals were walking.

Based on his training and experience, Agent Mayfield knew that the intersection of Goodall Road and Moon Road in Derby is frequently used by smugglers to bring illegal aliens into the United States from Canada and quickly transport them away from the border. This intersection is approximately a half mile south of the border and runs parallel to the United States-Canada border in two directions. Directly north of Goodall Road on the Canadian side of the border is another road that runs parallel to the border. At that location, an individual can step out of his or her vehicle and stand on the border. Agent Mayfield credibly testified that the intersection of Goodall Road and Moon Road provides not only an easy drop-off point on the Canadian side but quick access to a highway and other roadways on the United States side.

Moon Road is a dead-end road that begins at Goodall Road and extends diagonally in a southeasterly direction. East of its intersection with Moon Road, Goodall Road intersects with Tree Farm Road, which begins at Goodall Road and extends north until it reaches a dead end at the United States-Canada border. The area is remote and rural, consisting of woods, agricultural fields, farms, a few residences, and no retail businesses. There is scant traffic on Goodall Road in the evening and no street lighting.

Investigating the possible illicit border crossing activity, Agent Mayfield drove past the intersection of Goodall Road and Moon Road and parked at the intersection of Goodall Road and Tree Farm Road with his lights off, engine on, and windows partially rolled down. After approximately fifteen minutes, he observed a vehicle turn on its lights, slowly exit a driveway on Tree Farm Road, turn on to Goodall Road, and drive towards

the intersection of Goodall Road and Moon Road. Based on his training and experience, Agent Mayfield found this slow driving suspicious because it appeared that the vehicle's driver was looking for someone to pick up. The vehicle in question was a navy blue 2012 Honda Pilot.

Agent Mayfield followed the Honda Pilot from approximately eight to ten car lengths and saw that it had an out-of-state license plate. Based on Agent Mayfield's training and experience, alien smugglers often use vehicles with out-of-state license plates. He called in the plate number and dispatch advised him that the Honda Pilot was registered to a person in Connecticut. From approximately five to six car lengths away, Agent Mayfield observed the Honda Pilot stop approximately a quarter mile east of the intersection of Goodall Road and Moon Road and flash its high beams, which in his experience may be a signal for someone to get into the vehicle. This location was in close proximity to where the suspected border crossers would likely exit the woods. The Honda Pilot then suddenly sped off. Agent Mayfield did not see anyone enter the Honda Pilot and did not see an interior light triggered by a door opening, but he credibly testified that it was dark and, in his experience, pickups may happen very quickly.

Agent Mayfield pursued the Honda Pilot and effected a traffic stop. Ms. Constante-Zamora was the sole passenger in the Honda Pilot, which was driven by a male operator.[1]

## II. Conclusions of Law and Analysis.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a law enforcement officer may make a brief investigative stop based upon reasonable suspicion that "criminal activity may be afoot[.]" *Id.* at 30. The officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Reasonable suspicion is "considerably less than proof of

[1] Although the government provides evidence regarding the events that followed the vehicle stop, "[a]ny events that occur after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance." *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013).

wrongdoing by a preponderance of the evidence[]" and "obviously less demanding than that for probable cause[.]" *United States v. Sokolow*, 490 U.S. 1, 7 (1989). An officer's "inchoate and unparticularized suspicion or 'hunch[]'" is insufficient to justify a stop. *Terry*, 392 U.S. at 27. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

BP agents on roving patrol are subject to *Terry*'s reasonable suspicion standard. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (explaining that agents "on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country[]"); *see also United States v. Singh*, 415 F.3d 288, 294 (2d Cir. 2005) (explaining that officers on roving patrol must have a "particularized and objective basis for suspecting legal wrongdoing" in light of the "totality of the circumstances") (internal quotation marks and citation omitted). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in [brief investigatory stops of persons or vehicles], the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot[.]" *Arvizu*, 534 U.S. at 273 (internal quotation marks and citations omitted).

When a BP agent has a reasonable suspicion of criminal activity, she or "he may stop the car briefly and . . . question the driver and passengers about their citizenship and immigration status, and . . . may ask them to explain suspicious circumstances[.]" *Brignoni-Ponce*, 422 U.S. at 881-82. Both drivers and passengers are seized for Fourth Amendment purposes during a vehicle stop of this nature and may challenge its constitutionality. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. . . . We hold that a passenger is seized as well and so may challenge the constitutionality of the stop.").

In forming a reasonable suspicion, law enforcement officers may "draw on their

own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (internal quotation marks and citation omitted). "[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Cortez*, 449 U.S. at 419.

The following factors may support or negate a reasonable suspicion:

> (1) characteristics of the area where the vehicle is found; (2) its proximity to the border; (3) usual traffic patterns on that road; (4) previous experience with alien traffic in the area; (5) recent information about specific illegal border crossings there; (6) the driver's behavior, such as attempting to evade officers; (7) characteristics of the vehicle itself; and (8) the appearance of persons in the vehicle, such as mode of dress.

*Singh*, 415 F.3d at 294 (citing *Brignoni-Ponce*, 422 U.S. at 884-85). "This list is not exhaustive and . . . the fact that some factors are suspicious" while "others appear innocent does not defeat a finding of reasonable suspicion." *Id.* at 294-95. The court must consider "the totality of the circumstances" or "the whole picture[,]" *Cortez*, 449 U.S. at 417, and should not view the facts "in isolation from each other[.]" *Arvizu*, 534 U.S. at 274.

Ms. Constante-Zamora argues that Agent Mayfield lacked a reasonable suspicion of criminal activity because he did not observe anything suspicious other than a vehicle with out-of-state plates driving slowly in an area near the border. The court disagrees.

Agent Mayfield observed the Honda Pilot in a remote, rural area at night approximately a half mile from the border. The proximity to the border alone contributes to a reasonable suspicion that criminal activity may be under way. *See United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999) (considering the stop's "proximity to the border" a "paramount factor in determining reasonable suspicion[]") (internal quotation marks and citation omitted); *see also United States v. Casasola-Seguero*, 2023 WL 313905, at *5 (D. Vt. Jan. 19, 2023) (noting the "location of an out-of-state vehicle in the rural location at a time of night in which there was little or no traffic[]" contributed to a

reasonable suspicion). Not only was the area in question frequently used for illicit border crossings, there was a recent alert that same evening that remote sensors had detected an illegal border crossing by three individuals.[2]

Shortly after he arrived to conduct surveillance, Agent Mayfield observed an out-of-state vehicle stop near where he suspected the illicit border crossers would exit the woods and flash its high beams, a signal used to alert illegal aliens waiting to be picked up.[3] The Honda Pilot was driving slowly. *See United States v. Belanger*, 2009 WL 2190377, at *5 (D. Vt. July 13, 2009) (concluding a reasonable suspicion justified BP stop of SUV driving 25 m.p.h. in a 35 m.p.h. zone in a Vermont border town where "sensor activation indicated possible human foot traffic in [the] area where smuggling recently had increased[]"); *see also United States v. Nichols*, 142 F.3d 857, 866 (5th Cir. 1998) (citing the "unusually slow speed" of the vehicle when "traffic at that time was very light" as relevant to reasonable suspicion analysis). After stopping and flashing its high beams, the Honda Pilot sped off. Based on his training and experience, Agent Mayfield reasonably believed a pickup of the individuals who had illegally crossed the border may have taken place or was imminent. The totality of the circumstances thus established a reasonable suspicion of criminal activity based upon articulable, objective

---

[2] *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975) (noting a court may consider a BP agent's "previous experience with alien traffic" in the area in determining the lawfulness of a traffic stop); *United States v. Singh*, 415 F.3d 288, 295 (2d Cir. 2005) (concluding reasonable suspicion justified stop where agents observed vehicle "driving on a rural road near the U.S.-Canadian border in an area where illegal immigrants frequently attempt to enter the United States by hiking through the woods[]" and agents were informed of suspected border crossing nearby); *United States v. Reyes*, 2017 WL 3206319, at *4 (D. Vt. July 27, 2017) (noting the stopped vehicle was "the only vehicle observed on [the road] shortly after an illegal border crossing witnessed by multiple [BP] agents[]").

[3] *See Singh*, 415 F.3d at 291, 294-95 (weighing that defendant drove slowly on rural road and tapped brakes repeatedly, "a common signal used to alert aliens attempting to cross the border illegally that a vehicle is waiting to pick them up[,]" when concluding a reasonable suspicion existed); *see also United States v. Gomez-Lotero*, 2015 WL 5123249, at *4 (D. Vt. Aug. 31, 2015) (denying motion to suppress where, among other things, vehicle with New Jersey plates was stopped on unpaved road in Vermont at 1:30 a.m. that "normally [saw] only local traffic during the day and no traffic at 1:30 a.m[.]" and where illegal trafficking incident had recently occurred).

facts that the Honda Pilot was associated with the illegal border crossing that had just taken place. *See United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018) ("The reasonable suspicion standard is 'not high' and is 'less demanding than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity *may* be afoot.'") (emphasis in original) (quoting *United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015)). The traffic stop was therefore not unlawful.

## CONCLUSION

Because a reasonable suspicion supported the stop of the vehicle in which she was traveling, Ms. Constante-Zamora's motion to suppress based on a Fourth Amendment violation is DENIED. (Doc. 30.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 14th day of November, 2023.

Christina Reiss, District Judge
United States District Court